JACOB D. JOSLIN v. NEW JERSEY CAR SPRING COMPANY.

1. A promise to pay "all liabilities" of a manufacturer, in consideration of a sale and transfer of all the property and assets, will include a disputed claim for the salary of the foreman of the factory.
2. An action may be maintained on a written promise made by the defendant to a third person, for the benefit of the plaintiff, without any consideration moving from the plaintiff to the defendant.

Joslin v. New Jersey Car Spring Co.

3. Where an amendment is allowed by the court, at the trial. on motion to set aside the verdict, both surprise and substantial merits should be shown; and when justice has been done by a verdict, a new trial should not be granted.

In case. On rule to show cause why verdict should not be set aside.

The plaintiff was employed as the foreman of the defendants at their rubber factory in Jersey City, from January, 1866, to February 1st, 1870. At the latter date the company leased the factory to Fields & King for a term of five years. Fields & King took the property, business and assets of the company, and assumed their liabilities. The plaintiff continued in the factory as foreman in the employ of Fields & King from February 1st, 1870, to October 1st, 1871, at which time the lease was surrendered to the defendants.

The company took Fields & King's assets and stock, and assumed all their liabilities; also, all the liabilities of Fields, who had bought out King before the transfer was made.

The contract between the parties consisted of the proposal by Mr. Fields to the company, September 30th, 1871, which was presented to the directors at a meeting in the company's office, 45 Courtlandt street, New York. The plaintiff was present at the meeting as a director. The proposal was "to cancel said lease, and carry on the business of the corporation under its proper title for the benefit of the stockholders; the terms of the surrender of the lease to be the same terms as it was made, to wit, the company to take all material manufactured and unmanufactured, with all merchandise and accounts, and assume all liabilities, crediting me with any excess, and debiting me with any accounts that may prove bad."

This proposition of Mr. Fields was accepted by a resolution of the directors, entered in their minute book, and the lease was therein ordered to be duly cancelled from October 1st, 1871.

Since that time the defendants have been in possession of the factory, and business has been carried on in their name.

Joslin v. New Jersey Car Spring Co.

The plaintiff continued as before in the factory as foreman up to January, 1872, when he was discharged by the company. His salary from January, 1866, to May, 1867, was at the rate of $1200 per year. In May, 1867, it was raised to $1500 per year. The plaintiff's testimony was, that on October 1st, 1869, he had notified Mr. Fields, who was the president of the company, owned more than half the stock, and was the general agent and manager of the business during all the time the plaintiff was there, that he intended to leave. The plaintiff (Joslin) went to Trenton and made a contract with Whitehead Brothers to enter their employment as foreman for $2000 per year and house rent. He saw Fields on his return, and told him of his engagement with Whitehead Brothers. He testifies that Fields said to him that he was worth just as much to their concern as to any other, and they could afford to pay him as much as any other, requesting him to reconsider the matter and stay with them; also, that at Fields' request he made an arrangement with Whitehead Brothers to send another man in his place, and stayed with the company until January 8th, 1872. Joseph Whitehead, one of the firm of Whitehead Brothers, corroborated the plaintiff's statement, that he had been employed by them for $2000 per year and a house to live in. The house he was to occupy was in the country, two or three miles from Trenton, near their factory, and rented for $75 a year.

Fields testified that he did not make with the plaintiff the arrangement of October, 1869, as he alleged, but admitted that he did tell Joslin at that time that they could do as well by him as any one else would. After this alleged new contract, Joslin continued to draw his pay as before, $30 per week.

He claimed in the action his increased salary from January 1st, 1870, stating a balance of $571.17 as due to him. He also claimed $651.84 for house rent in Jersey City, which he had paid from January 1st, 1870, to January 1st, 1872. The jury rendered their verdict for the full amount claimed, $1223.01.

Joslin v. New Jersey Car Spring Co.

Argued at November Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, DALRIMPLE and SCUDDER.

For the rule, *J. F. Randolph, Jr.*

Contra, *J. B. Vredenburgh.*

The opinion of the court was delivered by

SCUDDER, J.    The facts above stated on the part of the plaintiff were found by the jury in his favor.    There can hardly be a doubt upon the testimony that he gave up his engagement with Whitehead Brothers, with the understanding that he was to have an annual salary of $2000, from January 1st, 1870, and house rent.    The defendants deny the agreement, but Fields admits that he told him they could do as well by him as any one else would, if he remained with them.    The jury have rightly construed this as a promise that Fields & King would do as well for him as Whitehead Brothers had agreed.    If it were otherwise, it was a deception attempted upon him.    I think the verdict is sustained by the evidence.    The plaintiff was entitled to his $2000 salary and a house for his family to live in, at a reasonable rent, if the jury believed his testimony, and his claim has strong merits.

The defendants object further, that the plaintiff has no legal claim against them for the salary and house rent from February 1st, 1870, to October 1st, 1871, while he was in the employ of Fields & King, and Fields alone; that they did not assume this, and the plaintiff has no right of action against them for services rendered to Fields & King, and Fields during that time.

The defendants, when the lease and property were surrendered to them by Fields October 1st, 1871, assumed " all liabilities of Fields & King, and Fields, receiving as a consideration therefor at that time, besides the surrender of the lease, all the materials manufactured and unmanufactured, with all the merchandise and accounts."    The plaintiff had knowledge and gave assent at the time to this arrangement,

Joslin v. New Jersey Car Spring Co.

for he was present and acted upon it as one of the directors of the company. He assented to the transfer of this liability from Fields & King to the company, and took them as his debtors. The defendants however contend that these liabilities which they assumed to pay must be confined to such as were admitted, and such as appear on the books of Fields & King; and that the statement of liabilities made out at that time, or soon after, does not show this claim of Joslin as unsettled. It is a sufficient answer to say that this was not the contract. The defendants, in their accepted proposition, assumed all liabilities without any specification or limitation. This includes any and all arrearages of wages due workmen for services, and any unpaid salary to the foreman, although they might be in dispute at the time. The term used in the proposal is not debts, accounts, or any admitted and ascertained sum, but "all liabilities." This is broad enough to cover a disputed claim for wages or salary to the foreman of the factory. Liability is defined to be a state of being bound or obliged in law or justice. This is alike the legal and popular definition of the word, and the jury have so understood and rendered it. The plaintiff assented and gave credit upon this construction, and he has the right now to insist upon it as the true interpretation of the contract.

But if it be true that the defendants assumed the payment of all the liabilities of Fields & King, and if this unsettled balance claimed by the plaintiff was included in this assumption, it is further insisted that the plaintiff cannot maintain the action in his own name against them, as there is no privity of contract, and no consideration was passed between them. All the positions taken by counsel upon this point in the case and many of the authorities cited, are fully examined and explained in *Barker* v. *Bucklin*, 2 *Denio* 45. It is therein held that an action may be maintained on a promise made by the defendant to a third person for the benefit of the plaintiff, without any consideration moving from the plaintiff; and that where B being indebted to the plaintiff sold property to the defendant, who agreed to pay the price

of it to the plaintiff on account of his demand against B, the plaintiff might maintain an action against the defendant on such promise. 1 *Pars. Cont.* 389–90; 2 *Am. Ld. Cas.* 185, and notes; *Blunt* v. *Boyd*, 3 *Barb.* 209; *Feltmakers* v. *Davis*, 1 *B. & P.* 101, note (c).

It is also stated in some of the authorities above cited, as a result of a review of the cases, that it is now well settled, as a general rule, that in cases of simple contracts, if one person makes a promise to another for the benefit of a third, the third may maintain an action on it though the consideration does not move from him. See also *Farley* v. *Cleveland*, 4 *Cow.* 432; *S. C.,* 9 *Cow.* 639.

The rule is otherwise in case of sealed contracts. *Millard* v. *Baldwin*, 3 *Gray* 484; *Johnson* v. *Foster*, 12 *Metc.* 167.

The present case avoids the question which is sometimes raised, where the assumption is by parol, whether as a promise to pay the debt of another, it is not within the statute of frauds, because here the proposal and resolution of acceptance are in writing, and the consideration is fully expressed. Here also there is a new and distinct consideration for the promise of the defendants moving to them from Fields in the surrender of the lease, and the transfer of all the property and assets of said firm and of Fields. *Hetfield* v. *Dow*, 3 *Dutcher* 440.

One other reason for setting aside the verdict and granting a new trial remains to be considered.

The declaration contained only the usual common counts and short statements of the amounts claimed, annexed as a bill of particulars. After the testimony had closed, the plaintiff's counsel moved to amend his declaration by adding account for moneys due to the plaintiff for services rendered to Fields & King and to Fields, the payment of which was assumed by the defendants. The amendment was allowed by the court under our practice act. *Nix. Dig.* 739, § 166.* On this motion for a new trial, the defendants claim that they were surprised, and were deprived of their appropriate defence by this amendment. Affidavits have been taken

* *Rev., p.* 869, § 138.

Joslin v. New Jersey Car Spring Co.

under the rule to show cause to establish the fact by a defence to the amended count, and to show the effect of the action of the court in permitting the amendment.

If all the facts that have been shown on this rule were in the case submitted to the jury, their verdict would still be right; and if the case were before us to set aside the verdict upon those facts proven, this court would not disturb it because it was against the weight of evidence, or unjust. This testimony is mainly cumulative, and the plaintiff's case, from the circumstances known to the defendants and involved in the issue, could have been anticipated readily. Both surprise and substantial merits should be shown to warrant the court in setting aside the action of the court below, and where justice has been done by a verdict, a new trial should not be granted. *Steelman* v. *Steelman*, 1 *Harr.* 66; *Princeton Turnpike* v. *Gulick*, 1 *Harr.* 167; *Hilliard on New Trials* 46–48, 398; 2 *Archb. Pr.* 252.

I am also satisfied that the amendment permitted was within the power of amendment, as heretofore determined in this court, and the subject matter of the amendment was within the issue upon the record before such amendment was made. *Hoboken* v. *Gear*, 3 *Dutcher* 265; *Price* v. *N. J. Railroad Co.*, 2 *Vroom* 229.

The attempt of these supplemental affidavits was merely to show that the assumption of liabilities was confined to such as appear on the books of the company, in opposition to the written proposal made by Fields to pay "all liabilities." The plaintiff and the defendants knew and assented to the arrangement at the time it was made, and upon all the facts shown, I think the plaintiff was entitled to a liberal, and not a narrow, construction of the term used.

The rule is discharged, and the verdict sustained.

CITED in *Farrier* v. *Schroeder*, 11 *Vr.* 601; *Redstrake* v. *Cumberland Ins. Co.*, 15 *Vr.* 294; *Pruden* v. *Williams*, 11 *C. E. Gr.* 210; *Crowell* v. *Currier*, 12 *C. E. Gr.* 152; *Crowell* v. *Hospital of St. Barnabas*, 12 *C. E. Gr.* 650; *Price* v. *Trusdell*, 1 *Stew.* 200; *Cubberly* v. *Cubberly*, 6 *Stew. Eq.* 82.