CATHARINE MOWERS

*v.*

DAVID FOGG et al.

This court will not undertake to compel the specific performance of an agreement to take care of and provide for the complainant in case of her "general debility or sickness."

On bill for relief.

*Mr. J. W. Acton,* for the complainant.

*Mr. W. W. Hilliard,* for the defendants.

BIRD, V. C.

On the 31st day of July, 1862, the complainant, being the owner of a tract of land worth about $300, entered into an agreement with one John C. English and Caroline W., his wife, to convey the said lot to them, and did make an absolute deed of conveyance of the same to them, in which the consideration expressed was $100. At the same time they entered into an agreement with her which witnessed that for and in consideration of the said deed they agreed to pay to the said Mowers every year, during her natural life, the sum of $6 per year, with these additional provisions:

"And in case of general debility or sickness of the said Catharine Mowers,

they are to see that she is properly taken care of; and she is to remain in the dwelling, unmolested from us, where she now dwells, during her lifetime, and at her death the whole property on said premises to belong to said John C. English and Caroline W., his wife, their heirs and assigns forever, agreeable to the above-mentioned deed."

It is proper to say the said deed, as printed among the exhibits, has no *habendum* clause or any covenants,—only the granting clause and the description of the premises following. The complainant was living in a small dwelling upon the premises at the time of the execution of this deed and agreement, and continued to live there for twenty years. The insistment now is that the "general debility and sickness" referred to in the agreement overtook her, and that the defendants, who stand in the place of John C. English and Caroline W., his wife (John C. English having died, and David Fogg, one of the defendants, having married his widow), refused, and have refused for five years last past, to see that she has been properly taken care of, although often requested so to do. They knew that her destitution was such that she was obliged to secure the aid she needed from other friends, to pay for which she had nothing.

The bill is filed by the complainant to obtain relief according to the terms of the agreement. The prayers are, that the defendants may be decreed to pay the said Mowers yearly, during her natural life, the sum of $6; and in case of general debility and sickness, to see that she is properly taken care of, and that she may remain in the same dwelling unmolested, and that the said dwelling might be made tenantable, and that the said $100 might be decreed to be paid to her.

As to the prayer for a decree directing the payment of $6 yearly, I must say that there does not seem to be any necessity for such a decree, since, if I understand the evidence produced, it has been paid according to the agreement. As to the $100, if it has not been paid as the deed expressly declares, I can find nothing in the evidence to warrant the belief that it is now due, or that it was to be paid at any particular time, or that it is due because of any special demand for it, or that there is any necessity for the interference of this court. It seems to me that, if the

complainant has a right to that sum of money from the defend--
ants, there is no obstruction to her recovering a judgment at law
and enforcing it by execution. By virtue of the agreement,
English, in his lifetime, was liable therefor, and so was his estate
after his decease, and so, also, was and is his wife.

Nor do I find, in the case, any necessity for a decree making
these moneys, or any others that may become due, liens upon
the land in question, for it is not alleged that Mrs. Fogg is in-
solvent, nor, as intimated above, does it appear that the $100 are
still really due and owing.

So far as the bill seeks to enforce the contract to take care of
the complainant in case of "general debility or sickness," I can
find neither principle nor precedent upon which to base a decree
in favor of the complainant. The authorities all seem to be
against the court undertaking to enforce any such contract. How
can the court, from time to time, determine what is meant by
"general debility or sickness?" If it be possible, within any
equitable rule, to settle it, in one instance, how can the court de-
termine how long such "debility or sickness" may continue?
Or how can the court determine when she is properly taken care
of, or how long such care should continue, supposing it were
possible for the court to establish a standard? I can see no way
by which this court can aid the complainant; and this seems to
have been the experience of every court which has been called
upon to inquire whether or not such aid could be afforded. I
refer to *Wharton* v. *Stoutenburgh*, 8 *Stew. Eq. 266; Danforth* v.
*Philadelphia. & Cape May R. R. Co.*, 3 *Stew. Eq. 12; Rutan* v.
*Crawford*, 18 *Stew. Eq. 99; Clark's Case*, 1 *Blackf. 122* (12 *Am.
Dec. 213 and notes on page 217*); *Iron Age Publishing Co.* v.
*Union Telegraph Co.*, 3 *Am. St. Rep. 758* and cases in *note 767;*
*Wollensak* v. *Briggs*, 119 *Ill. 453*, and cases cited therein;
*Chouteau* v. *Union R. & T. Co.*, 4 *West. Rep. 401* and cases cited;
*Ikerd* v. *Beavers*, 106 *Ind. 483; Waterm. Spec. Perf.* §§ *33, 40,
117; Fry Spec. Perf.* §§ *56, 58*. The only exception that I can
find to this rule is in cases where the court can interpose to
prevent a breach of a negative covenant, and thereby, in effect,
enforce an affirmative one, or, as clearly expressed by the Lord

Chancellor, in *Lumly* v. *Wagner, 1 De G., M. & G. 604, 615*, that. " preventing the commission of an act may as effectually perform. an agreement as an order for the performance of the act agreed to be done."

The question of damages so elaborately discussed in brief of counsel, I think cannot be favorably considered in this court,. under the circumstances of this case.

I will advise that the bill be dismissed, without costs.