104 N.J. Super. 250 (1969)
249 A.2d 623
MOORESTOWN MANAGEMENT, INC., SUCCESSOR TO MOORESTOWN CENTER, INC. AND MOORESTOWN MALL MERCHANTS ASSOCIATION, INC., PLAINTIFFS
v.
MOORESTOWN BOOKSHOP, INC., t/a PAPER BACK DEN, ROCCO A. DI PALMO AND WILLIAM G. THOMPSON t/a BIG TOP OF MOORESTOWN MALL, INC. AND ROCCO A. DI PALMO, ASSIGNEE, WALTER J. HAGEN t/a STAMP KORNER, CHARLES SIBBITTS t/a MARI'S JEWELERS, GINZA, INC., EDISON NEW JERSEY STORES, INC. t/a BAKER'S SHOES, ALEXANDER R. CUNNINGHAM AND PATRICIA B. CUNNINGHAM, HIS WIFE, AND MERVIN HANDLER AND FLORA HANDLER, HIS WIFE, ASSIGNEES, t/a CLASSIC ONE HOUR CLEANERS, MURRAY ROTHENBERG AND MERCEDES MARINELLI t/a MERCEDES TIES AND ZOLTAN SCHWARTZ t/a ZOLTAN TIES, ASSIGNEE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 22, 1969.
*254 Mr. Antonio R. Cioffi, attorney for plaintiffs.
Mr. Charles Lee Harp, Jr. for defendant Edison New Jersey Stores, Inc. (Messrs. Archer, Greiner, Hunter & Read, attorneys).
Mr. Edward N. Adourian, Jr. for defendant Zoltan Schwartz (Messrs. Plone, Tomar, Parks and Seliger, attorneys).
WICK, J.S.C.
In this suit the landlord and a third-party beneficiary under various leases seek a declaratory judgment for the purpose of determining the rights and obligations of the parties who have interests under the leases. N.J.S.A. 2A:16-50 et seq. Plaintiffs also seek specific performance of certain provisions of the leases. The operative facts are set forth below.
Plaintiff Moorestown Management, Inc. ("Moorestown") is the owner and operator of a shopping center complex commonly known as Moorestown Mall located in Moorestown, New Jersey. Moorestown is the successor in title to Moorestown Center, Inc. which contracted to lease store area in the center with the following defendants involved in this suit: a lease dated June 24, 1963 with Edison New Jersey Stores, *255 Inc. ("Edison") for a term of 20 years; a lease with Murray Rothenberg and Mercedes Marinelli dated October 8, 1963 for a term of ten years (as of November 29, 1965 Zoltan Schwartz ("Schwartz") assumed the obligations as assignee).
Moorestown Mall Merchants Association, Inc. (hereinafter "Association") is a nonprofit association which was incorporated under the laws of New Jersey N.J.S.A. 15:1-1 et seq. on February 17, 1964. The primary purpose of the Association is to promote the Mall by means of advertising, special events, public and community relations and other such means, It is composed of the tenants in the shopping center who elect the board of trustees and determine the policies thereof. The tenants are obligated under the terms of their leases to join the Association and pay dues thereto.
On February 17, 1964 an organizational meeting of the Association was held for the purpose of discussing and adopting a set of by-laws. Representatives of all stores, including Edison and Schwartz, attended this meeting. After discussing the proposed by-laws, the members were offered an option whether to vote on the by-laws or to have a committee review them and present them at a subsequent meeting for approval. The members voted to form a committee of ten tenants, including Edison.
The committee reviewed the by-laws and at a meeting on March 11, 1964 all the committee members except Edison voted to accept them. However, it does not appear from the evidence that these by-laws were ever voted upon or adopted by the entire membership.
On June 3, 1964 Edison notified the Association by letter that it was resigning from the Association and would not consider itself liable for dues for the reason that, contrary to the lease agreement, the by-laws interfered with the internal policies of Edison. Edison also contended that the voting arrangement in the by-laws violated the "one-man, one-vote" provision of the lease and that the by-laws were not properly adopted.
*256 Defendant Schwartz took the position that paragraph 13(h) of the lease is unconscionable in that it attempts to bind the lessee to unspecified obligations. Both Schwartz and Edison continue to be tenants of the shopping center.
The plaintiffs instituted this suit to compel these tenants to continue their membership in the Association and to require them to pay the Association the past dues owed.
In this case the written shopping center leases are the instruments which primarily govern the rights and obligations of the parties. In light of this fact, I should point out that such leases present the court with novel legal problems which are just beginning to be dealt with in judicial and academic circles. Dover Shopping Center, Inc. v. Cushman's Sons, Inc., 63 N.J. Super. 384 (App. Div. 1960); Barr & Sons, Inc. v. Cherry Hill Center, Inc., 90 N.J. Super. 358 (App. Div. 1966); Colbourne, "A Guide to Problems in Shopping Center Leases," 29 Brooklyn L. Rev. 56 (1962); Morris, "Shopping Centers," 1955 Ill. L. Forum 681; Pollack, "Shopping Center Leases," 9 U. of Kans. L. Rev. 379 (1961); Kranzdorf, "Problems of the Developer," 1965 Ill. L. Forum 173. A shopping center such as Moorestown is more akin to a joint venture of landlord and tenants than to the traditional independent relationships between a single landlord and tenant usually created in store leases. For example, in a shopping center such devices as the percentage leases and the merchants associations make the fortunes of the landlord and tenants unalterably intertwined. Thus, the greater the extent to which the center operates as a unified whole, with each store complementing the other, the greater the measure of success. Hemmingway, "Selected Problems in Leases of Community and Regional Shopping Centers," 16 Baylor L. Rev. 1 (1964). It is from this perspective that the courts can best view the rights and obligations of the parties involved.
Edison and Schwartz's obligations to join the Merchants Association and to pay dues thereto are predicated on paragraph *257 13(h) of the lease agreements executed by the individual tenants and on the by-laws which were enacted pursuant to the leases. Paragraph 13(h) states:
"Rules and Regulations. Tenant agrees that at all times during the term of this lease it shall at its own cost and expense:

* * * * * * * *
(h) Become a member of, participate fully in, and remain in good standing in the Merchants' Association (as soon as the same has been formed) limited to tenants occupying premises in the Shopping Center, and abide by the regulations of such Association. Each member tenant shall have one vote and the Landlord shall also have one vote in the operation of said Association. The objects of such Association shall, among other things, be to encourage its members to deal fairly and courteously with their customers, to sell their merchandise or services at fair prices, to follow ethical business practices, to assist the business of the tenants by sales promotions and center-wide advertising, and in particular to help the interests of members of the said Association. The Tenant agrees to pay minimum monthly dues to the Merchants' Association in such amount as may be established by the Association, subject, however, to annual adjustments, approved by a majority vote of the members of the Association, increasing said dues.
The Tenant also agrees to pay to the Merchants' Association an initial assessment, in addition to the foregoing dues, in such amount as may be established by the Association for the purposes of defraying the promotional and public relations expenses to be incurred by the Merchants' Association in connection with the joint opening of the Shopping Center.
Nothing in the By-Laws or regulations of the said Association shall be in conflict with the provisions of this lease, including without limiting the generality of the foregoing any reasonable rules and regulations adopted pursuant to the provisions of Subdivision K hereof, or in any wise shall affect the rights of the Landlord. (Tenant may however cease to be a member in the event that the Merchants' Association interferes with the internal policies of Tenant.)"
Schwartz's lease does not contain the final sentence. Article V of the by-laws of the Association establishes the formula for the assessment of dues. This formula is based on a dollar rate per square foot of the tenant's store area.
Defendants raise the issue as to whether the Association, a third-party beneficiary under paragraph 13(h), is a proper party in a suit for the enforcement of the lease. N.J.S.A. 2A:15-2 provides for a suit by a person for *258 whose benefit the contract is made although the consideration of the contract did not move from him. Under New Jersey common law the courts have recognized the right of a third-party beneficiary to enforce a contract if he is a donee beneficiary (if in buying the promise the promisee intends the promised performance as a gift to the third party), or creditor beneficiary (if in buying the promise the promisee intends the third party to receive the performance in satisfaction of a real or supposed duty or obligation owed by the promisee). Drewen v. Bank of Manhattan Co., 31 N.J. 110 (1959); Joslin v. New Jersey Car Spring Co., 36 N.J.L. 141 (Sup. Ct. 1873).
In order to qualify as a third-party donee or creditor beneficiary the applicant must prove that the contract was made and intended for him. If he does this, he has a sufficient interest in the enforcement of the promise so as to entitle him to sue for damages or to invoke the aid of a court of equity if the remedy at law is inadequate. Drewen v. Bank of Manhattan Co., supra; 4 Corbin on Contracts, (1963 Ed.) § 782, p. 78; Restatement, Contracts, (1932 Ed.), § 32. In this case the promisee, Moorestown, expresses a clear intention and purpose in paragraph 13(h) of the lease to confer a benefit upon Association as a gift in the form of the promise by the tenant to join and to pay dues to the Association. Accordingly, the Association as a donee beneficiary has a sufficient interest in the enforcement of these covenants and is a proper party to this action.
We now come to a discussion of the merits of the case which involve issues relating to the validity, interpretation and enforceability of the terms of paragraph 13(h) of the leases. These aspects of the lease covenants  the promises to become and to remain a member in good standing of Association and the promise to pay dues  are governed by ordinary contract principles subject to the nuances mentioned above regarding shopping center leases. Thus, where the lease provisions were voluntarily executed for consideration *259 by competent parties, without fraud or deception, the parties should be bound thereby and their intention as expressed in the agreement should be enforced unless the agreement is against public policy. Dover Shopping Center, Inc. v. Cushman's Sons, Inc., supra; Terminal Const. Corp. v. Bergen County, etc., Sewer Dist. Authority, 34 N.J. Super. 478 (App. Div. 1954), modified 18 N.J. 294 (1955); 17 C.J.S. Contracts § 1 (2), p. 545.
Schwartz justifies its nonperformance of the covenants on the ground that paragraph 13(h) is unconscionable in that it attempts to bind the lessee to unspecified obligations, financial and otherwise, over which the tenant has no control or about which he cannot bargain. I do not concur, because in this case the element of unequal bargaining positions of the parties, which is ordinarily required to invoke the concept of unconscionability, is not present. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960); Williams v. Walker-Thomas Furniture Co., 121 U.S. App. D.C. 315, 350 F.2d 445 (D.C. App. 1965). Moreover, it is settled that an agreement is not unenforceable for lack of definiteness of price (i.e., dues) if the parties specify a practicable method by which the amount can be determined. 1 Corbin, op. cit., § 98, p. 433. Here, under the by-laws which were incorporated by reference to the lease, article V provides the formula for establishing dues, and the liability of a member of an association for dues so established has generally been upheld. 2 Am. Jur.2d, Associations and Clubs, § 25, p. 450.
Edison contends that it is relieved of any obligation to join or pay dues to Association because the Association has failed to comply with the terms of paragraph 13(h) in the following respects: (1) it has failed to have its by-laws formally adopted by the entire membership of the Association, and (2) certain by-laws by their terms deviate from the "one-man, one-vote" standard provided for in the lease.
After reviewing the procedure by which the Association's by-laws were adopted, I have concluded that they *260 were not enacted in the proper manner. Under common law the power to make by-laws resides in the constituent body, either members or stockholders of the corporation, unless the corporate charter or a statute provides otherwise. 18 Am. Jur.2d Corporations, § 163; 18 C.J.S. Corporations § 186, p. 596. See also N.J.S.A. 14:3-2. Although this power may be delegated by the members to a selected body, such a delegation of power will not ordinarily be inferred in the absence of any definite and clearly disclosed intention to this effect. Ibid. Applying the facts in this case I find that the proposed by-laws were discussed at the organizational meeting of the Association on February 17, 1964 attended by all tenants; that according to the minutes of the meeting a representative suggested that a vote be taken either to pass the proposed by-laws or refer them to a committee for the purpose of reviewing them and presenting them at a later date for membership approval; that the majority of the membership voted to send the by-laws to a committee; that on March 11, 1964 the by-laws committee voted to pass the by-laws, and that the by-laws were never submitted to the entire membership for their approval, yet the Association bound itself to do so.
Based on these findings of fact I believe that there was a technical defect with respect to the manner in which the Association's by-laws were enacted. This should be rectified by submitting the by-laws to the entire membership of the Association. As the situation now appears, the present members of the Association, except for Edison and Schwartz, would be precluded from challenging any previous actions pursuant to the by-laws on principles of ratification and estoppel (i.e., participating in the operations of the Association during four years and accepting the benefits thereof, with considerable monies and efforts expended by the Association for the benefit of the tenants of the center). 18 C.J.S. Corporations § 186 (4), p. 597-598; Taner v. Atlantic Cas. Ins. Co. of Newark, 37 N.J. Super. 9 (App. Div. 1955).
*261 With respect to Edison's attack on the substance of certain by-laws, I find that the by-laws referred to below deviate considerably from the "one-man, one-vote" standard of voting set forth in the lease. As previously pointed out, paragraph 13(h) requires that "Each member tenant shall have one vote and the Landlord shall also have one vote in the operation of said Association." It is clear that the language of the lease establishes a duty under which the Association is to guarantee the tenant one vote of equal value to any other with respect to all those matters which concern the operation of the Association. In light of the recent federal and state reapportionment cases, this democratic voting standard should be liberally construed. Jackman v. Bodine, 43 N.J. 453 (1964). Based on this line of reasoning the terms of the following by-laws are in violation of the lease: (a)article II, which deals with the board of trustees, provides that the board shall "consist of nine (9) members in good standing, five (5) to be elected from the membership, one (1) to be the Landlord * * *, and three (3) to be members appointed by the Landlord." This provision violates the lease standard inasmuch as the landlord is given a heavily weighted vote in the area of the day-to-day management of the Association's activities; (b) article V, section G and article V, section I, sub section 3 depart from the standard in that the former provides the compensation of the promotion director, which is to be paid by the Association "shall be fixed by the Landlord only and shall not be subject to the approval or disapproval of the Board of Trustees;" and the latter provides that "The Promotion Director * * * shall be employed or discharged by the Landlord only."; (c) article VI, section 5(c) also conflicts with the "one-man, one-vote" scheme contemplated by the lease, particularly by granting the landlord absolute veto power over any by-law provisions which relate to it; (d) similarly, article VI, section 5(b) provides that the dues are subject to modification by a voting arrangement in which "each member in *262 good standing (including the Landlord) shall have one vote for each dollar paid by such member in the fiscal year in which such vote shall take place." This provision is in direct conflict with the provisions of paragraph 13(h) which provide for the annual adjustment of the dues, "approved by a majority vote of the members of the Association, increasing said dues."
Notwithstanding these defects with respect to the manner in which the by-laws were adopted and with respect to the substance of certain by-laws, Edison and Schwartz should not be relieved of any future obligations to join the Association and to pay dues. Edison and Schwartz take this position, but I cannot agree with their argument because full compliance with paragraph 13(h) by the Association is not expressly or impliedly a condition precedent or condition subsequent to the tenants' obligations. A condition precedent is a fact or event occurring subsequently to the making of a valid contract and which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available. 3A Corbin op. cit., § 628, p. 16. A condition subsequent would occur after the breach of contract duty and terminates the right to immediate performance and also the right to judicial remedy. Ibid., at p. 17. I do not infer that the intention of the parties to the lease was to create a condition regarding these duties; rather, the language of the lease is merely promissory. See Duff v. Trenton Beverage Co., 4 N.J. 595, 604 (1950). If the parties had intended to establish such a condition they should have done so in language similar to that in a provision discussed later herein.
The effect of the foregoing finding is merely that Edison and Schwartz will not be relieved of future obligations under paragraph 13(h) during their respective tenancies because Association has not fully complied the lease terms. If and when the Association rectifies its defects, this court would *263 consider tenants' noncompliance with its covenants as a breach for which the appropriate legal remedies would be available. However, I do not feel that Association is entitled to recover the past dues allegedly owed by Edison and Schwartz because of Association's noncompliance and because the tenants in question had notified Association of their repudiation from the very outset.
I have reviewed the provision in the lease which provides that Edison may cease to be a member of the Association in the event that the Association interferes with the internal policies of tenant. Edison relies on this provision to argue that its internal policies preclude it from joining such an undemocratic organization. Although I believe the provision may be intended to operate as a condition subsequent, I cannot uphold Edison's position without any further clarification as to how it qualifies under it. A reasonable construction of the term "internal policies" suggests matters such as pricing, credit and inventory policies  not to such generalities as undemocratic voting arrangements in a merchants association. Furthermore, Edison has not submitted any proofs as to what its internal policies are. Therefore, it may not be relieved of future obligations on this ground.
The final issue to be resolved presents an interesting and novel question as to the right of the Association to compel the tenants to specifically perform their obligations under the lease. The general rule is that if the remedy in damages is inadequate, the determination of whether specific performance shall be decreed rests in the sound judicial discretion of the court. 2 Restatement, Contracts, § 359 (1932). Under the circumstances of this case there would be a great deal of difficulty in obtaining a substantial equivalent of the promised performance (i.e., joining the Association and remaining a member during the term of the lease) by means of money awarded as damages. For this reason, I deem the remedy at law is inadequate. It is true that as a general proposition, contracts which provide for the personal *264 affirmative acts or personal services of the parties are not specifically enforced because courts do not think they possess the means and the ability for enforcing their decrees. Mowers v. Fogg, 45 N.J. Eq. 120 (Ch. 1889); Pomeroy, Specific Performance of Contracts (3d Ed. 1926), § 222; 5 Corbin, op. cit., § 1204, p. 400. On the other hand, in this case, where there are no unique, skilled or personal services required of the tenant, this rule should not be applicable. This is particularly true where both public and private interests should benefit from the enforcement. (The Merchants Association is an organization designed to foster cooperation of the tenants in order to make the shopping center a success which benefits all tenants. A subsidiary function of the Association is to promote ethical business practices among its tenants which benefits the public interest.) Moreover, the propriety of a decree for specific performance of a shopping center lease has been upheld in Dover Shopping Center v. Cushman's Sons, Inc., supra, at p. 394. Notwithstanding that specific performance is an appropriate remedy to enforce the lease, the remedy would not be available until the Association fully complies with the lease by adopting the by-laws by a vote of the entire membership (including Edison and Schwartz) and by adopting by-laws which are properly democratic under the lease terms.
A judgment should be entered consistent with the foregoing conclusions.