PREPARED BY THE COURT

CITY OF ELIZABETH

Plaintiff,

v.

THE REINFORCED EARTH COMPANY,
JOHN SANKEY, P.E., NEW JERSEY
METRO MALL URBAN RENEWAL, INC.,
SLATTERY SKANSKA, INC. a/k/a
SKANSKA USA CIVIL NORTHEAST,
INC., JOHN DOE CORPORATIONS "1"
through "10;" and JOHN DOE
INDIVIDUALS "1" through "10," all
Fictitious Individuals and Entities,

Defendants

**FILED**

March 20, 2024

**Hon. Robert J. Mega, P.J.Ch.**

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:
UNION COUNTY

DOCKET NO. UNN-L-536-19

**ORDER**

**THIS MATTER** having been brought by DiRienzo & DiRienzo, P.A., counsel for Defendant Skanska USA Civil, Northeast, Inc. (Joseph DiRienzo, Esq. appearing) on a Motion for Summary Judgment pursuant to R. 4:46-2; and the Court having considered all papers submitted, having conducted oral argument on March 15, 2024, and for good cause having been shown:

**IT IS** on this 20th day of March 2024,

**ORDERED** that Defendant Skanska USA Civil, Northeast, Inc.'s Motion for Summary Judgment dismissal of Count One (Breach of Contract), Count Two (Breach of Implied Warranty), Count Three (Gross Negligence), and Count Four (Indemnification) of Plaintiff's Third Amended Complaint is herein **GRANTED**; it is further

**ORDERED** that Counts One through Four of Plaintiff's Third Amended Complaint are herein **DISMISSED against Defendant Skanska USA Civil, Northeast, Inc.**; and it is further

**IT IS FURTHER ORDERED** that a copy of this Order shall be deemed served upon uploading to eCourts.

_____
/s/ Robert J. Mega
HON. ROBERT J. MEGA, P.J. Ch.

Statement of Reasons Attached.

[X] Opposed

[   ] Unopposed

**Statement of Reasons**

Presently before the Court is Defendant Slattery Skanska, Inc. a/k/a Slattery Associates, Inc. a/k/a Skanska USA Civil Northeast, Inc. ("Defendant") Motion for Summary Judgment, seeking an Order dismissing all claims against Skanska USA Civil Northeast Inc. The Court conducted oral argument on the present motion on March 15, 2024 and incorporates same herein.

**Law and Analysis**

Summary Judgment Standard

Rule 4:46-2 provides that a court should grant a motion for summary judgment when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits submitted on the motion, reveal that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment as a matter of law. In Brill v. Guardian Life Insurance Company, 142 N.J. 520 (1995), the New Jersey Supreme Court set forth the current standard for Summary Judgment. The Court held that trial courts must determine whether an alleged disputed issue of fact is genuine by determining:

> …whether the competent evidential materials presented, when viewed in a light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged dispute issue in favor of a non-moving party. The import of our holding is that when the evidence "is so one-sided that one party must prevail as a matter of law," the trial court should not hesitate to grant summary judgment. If there exists a single unavoidable resolution of the alleged dispute of fact, that issue should be considered insufficient to constitute a "genuine issue of material fact" for purposes of Rule 4:46-2.

Id. 142 N.J. at 540 (citations omitted, emphasis added).

A plaintiff's self-serving assertion alone will not create a question of material fact sufficient to defeat a summary judgment motion. Martin v. Rutgers Cas. Ins. Co., 346 N.J. Super. 225, 232 (App. Div. 1999), certif. den. 163 N.J. 74 (2000) (questions of law dependent upon the operative facts cannot be decided by summary judgment when those facts are in dispute). A motion for summary judgment can be defeated only if the opposition addresses "specific facts" and "concrete evidence" to support a favorable jury verdict. Housel for Housel v. Theadoris, 314 N.J. Super. 597,

604 (App. Div. 1998). Nevertheless, the Court must examine the evidence presented in a light most favorable to the non-moving party. Brill, 142 N.J. at 540.

### Count One: Breach of Contract—Third-Party Beneficiary

In order to assert a claim for breach of contract, "plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007). "The essentials of a valid contract are: mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization." Cohn v. Fisher, 118 N.J. Super. 286, 291 (Law Div. 1972).

For a party to prevail on a claim that the terms of a contract were violated, the party asserting the claim must prove four elements: "first, that the parties entered into a contract containing certain terms; second, that [the] plaintiff did what the contract required [the plaintiff] to do; third, that [the] defendant did not do what the contract required [the defendant] to do, defined as a breach of the contract; and fourth, that [the] defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff." Woyatas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016).

In determining third-party beneficiary status, courts evaluate "whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts. . . ." Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73, 77 (E. & A. 1940). See also Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253, 259 (1982). Unless such a conclusion can be derived, a third party cannot sustain a cause of action despite the fact that it may derive an incidental benefit from the contract's performance. Rieder Cmtys. v. N. Brunswick, 227 N.J. Super. 214, 222 (App. Div. 1988); Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370, 373 (Law Div. 1972).

As stated in Gold Mills,

> The essence of contract liability to a third party is that the **contract be made for the benefit of said third party within the intent and contemplation of the contracting parties**. Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance. Crown Fabrics Corp. v. Northern Assur. Co., Ltd., 124 N.J.L. 27 (E.

3

& A. 1939); Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73 (E. & A. 1939) and Moorestown Management, Inc. v. Moorestown Bookshop, Inc., 104 N.J. Super. 250 (Ch.Div.1969). Under such circumstances, he is neither a creditor beneficiary nor a donee beneficiary but is merely an incidental beneficiary who acquires no enforceable rights under the contract.
[121 N.J. Super. at 373] (emphasis added).

The general rule is that, absent clear and specific indications to the contrary, a property owner is not the intended third-party beneficiary of a contract between a general contractor and a subcontractor. See, e.g., Insulation Contractor & Supply v. Kravco, Inc., 209 N.J. Super. 367, 375-76 (App. Div. 1986) (noting that it "is not the pattern or custom and usage within the building trade" for separate parties within "the sequential chain of payment in the construction industry" to have rights as third-party beneficiaries).

Here, for Plaintiff to enforce any contractual rights against Skanska or recover damages on a breach of contract claim, it must demonstrate that it was an intended third-party beneficiary, because the undisputed facts demonstrate that no agreement exists between Plaintiff and Skanska to confer such status. This Court previously disposed of Plaintiff's breach of contract claim **with prejudice** as to the RECo Defendants, stating that Plaintiff **was not** a third-party beneficiary to the agreements between RECo and Skanska. This Court specifically stated:

> …it is clear from the RECo Subcontract and Purchase Order Modification that service was rendered by the Vendor Defendant RECo to the General Contractor Skanska. Neither contract alludes to the City being a party nor intended third-party beneficiary. With respect to City's argument that the "100-year life guarantee" had to be made to someone, and if not the City, then who? It is arguable that the City was an incidental beneficiary of the guarantee. This, however, in itself does not confer a right of action upon the City.
>
> The aforementioned, coupled with the general rule that absent clear and specific indications to the contrary, a property owner is not the intended third-party beneficiary of a contract between a general contractor and a subcontractor, provides sufficient basis for this Court to deem Defendants' RECo's Motion to Dismiss **GRANTED as to COUNT I – Breach of Contract.**
> [Hon. Thomas J. Walsh, P.J.F.P. June 22, 2022 Order] (emphasis in the original).

Here, Plaintiff's theory of third-party beneficiary status with respect to Skanska is based on the same exact theory on which it relied in its previously disposed of claim against RECo,

stating it was a third-party beneficiary to the agreement between Skanska and RECo. Given that this Court previously disposed of Plaintiff's breach of contract claim **with prejudice**, finding Plaintiff was not a third-party beneficiary to the RECo and Skanska agreements, we decline the opportunity to find to the contrary here.

Notwithstanding, even if an Agreement existed between Skanska and Plaintiff, or if this Court found Plaintiff to be a third-party beneficiary, Plaintiff's breach of contract claim would still fail under the Statute of Repose, N.J.S.A. 2A:14-1.1.

**Statute of Repose**

The Statute of Repose, N.J.S.A. 2A:41-1.1, states in pertinent part:

> No action, whether in contract, in tort, or otherwise, to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, **shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such service and construction. This limitation shall serve as a bar to all such actions, both governmental and private**, but shall not apply to actions against any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

The Statute of Repose does not operate like a conventional statute of limitation, in that it "does not 'bar' a remedy in the sense of providing an injured person a certain time to institute suit after the 'accrual' of a 'cause of action.'" E.A. Williams v. Russo Dev. Corp., 82 N.J. 160, 167 (1980). Instead, injuries or damages occurring more than ten years after the completion of services simply do not, by legislative edict, form the basis for recovery. In essence, the Statute of Repose prevents what could have been a cause of action from ever arising. The Statute of Repose is triggered by substantial completion, which is the issuance of temporary certificate of occupancy. See Town of Kearny v. Brandt, 214 N.J. 76 (2013). When the project is performed in stages, the ten-year period starts running for all the parties from the final date of construction rather than from

the completion of each stage alone. Welch v. Engineers, Inc., 202 N.J. Super. 387, 397 (App. Div. 1985); see also Horosz v. Alps Estates, 136 N.J. 124, 131 (1994). However, for an architect or designer with no involvement in the contract administration phase, the Statute of Repose will commence from the time when the design documents were completed and delivered to the owner. See Hopkins v. Fox and Lazo Realtors, 242 N.J. Super. 320, 329 (App. Div. 1990).

Although courts construe the Statute of Repose broadly to achieve the legislative goal against expanding design and construction professionals' liability, Newark Beth Israel Med. Ctr. V. Gruzen & Partners, 123 N.J. 357, 363 (1991), the statute does include exemptions. Particularly, **the Statute of Repose does not bar an action by a governmental unit on a "written warranty, guaranty or other contract that expressly provides for a longer period**." N.J.S.A. § 2A:14-1.1(b)(1) (emphasis added).

In the present matter, Plaintiff's claim is similarly barred by N.J.S.A. 2A:14-1.1(b)(1), because Skanska did not provide Plaintiff with a "written warranty, guaranty or other contract that expressly provides for a longer effective period." This Court agrees with Skanska that the Design Calculations do not constitute a "written warranty, guaranty or other contract that expressly provides for a longer effective period." See N.J.S.A. 2A:14-1.1(b)(1). The Court specifically notes that **per representations of Plaintiff's in-house counsel, during his deposition on May 17, 2022, Plaintiff did not receive a written warranty from Skanska**.

> Q:      Did the city receive a written warranty from Slattery Skanska for any of the work it performed on this project? …
>
> William Richard Holzapfel: No.
> [Skanska Ex. F, Deposition Transcript of William Richard Holzapfel, Vol. II, 382:18-23]

Moreover, Plaintiff admits that the other parties to this action, who were actually parties to the agreements in which the design calculations were contained, did not consider the design calculations to represent a warranty by Skanska. See Skanska SUMF ¶ 50 and Pl. RSUMF ¶ 50. Additionally demonstrative of the fact that the design calculations did not constitute a written warranty is that Skanska's agreement with the developer (in which the design calculations were included) provided the developer with a one-year warranty on all improvements and no separate warranty for the RECo walls. See Skanska Ex. C; Contract Ex. D, ¶ 13.07. The existence of an

6

express one-year warranty between Skanska and RECo as part of their agreement clearly belies Plaintiff's argument that the design calculations constituted an express 100 year warranty.

Accordingly, Skanska is entitled to Summary Judgment dismissal of Count One of Plaintiff's Third Amended Complaint. Skanska's Motion for Summary Judgment dismissal of Count One is herein **GRANTED**.

## Count Two: Breach of Implied Warranty.

Here, Plaintiff's claim from breach of implied warranty is clearly barred by the Statute of Repose and its exceptions. The Statute provides in pertinent part: "[t]his section shall not bar an action by a governmental unit . . . on a **written warranty**, guaranty or other contract that **expressly provides for a longer effective period**." N.J.S.A. 2A:14-1.1(b).

Plaintiff's claim is based on their alleged status as a third-party beneficiary to the Skanska Agreement and RECo Agreement by virtue of being a party to the RIA, the Redevelopment Agreement, and the Amended Redevelopment Agreement, and additionally by virtue of being responsible for maintenance of the Walls. Plaintiff then asserts that the Skanska and RECo Agreements contain implied warranties including that Skanska and Defendants would (1) design and/or construct the Walls in a good and workmanlike manner; (2) design and/or construct the Walls using materials and methods fit for their intended purposes; and (3) skillfully, carefully, and/or diligently design, and/or construct the Walls in accordance with industry standards and the Codes. Plaintiff attempts to support their position that their breach of implied warranty claim is not barred by the Statute of Repose because the Design Calculations qualify as a "written warranty, guaranty or other contract" under exception (b)(1). See N.J.S.A. 2A:14-1.1(b)(1).

The exception at issue, however, states that "[t]his section shall not bar an action by a governmental unit . . . on a written warranty, guaranty or other contract that expressly provides for a longer effective period." N.J.S.A. 2A:14-1.1(b). The statute can only be read to mean that the action must be based upon that **written** warranty, guaranty, or other contract; whereas for this particular claim, Plaintiff refers to the Design Calculations as an indirect document ancillary to their breach of implied warranty claim. For this Court to accept Plaintiff's argument that it may succeed on a theory of implied warranty as an exception to the Statute of Repose, we would have to decide this issue in a manner which belies the clear legislative intent of N.J.S.A. 2A:14-1.1(b)(1). See Newark Beth Israel Med. Ctr., 123 N.J. at 363.

7

Furthermore, this Court finds that the Design Calculations do not constitute a "written warranty, guaranty or other contract" as a matter of law. See N.J.S.A. 2A:14-1.1(b)(1). The record is clear that the Design Calculations do not constitute any kind of contractual document; rather, they are merely a part of Defendants' performance pursuant to their agreement with Skanska. Moreover, the Design Calculations do not "expressly provide[] for a longer effective period" under the Statute of Repose. See id. The document instead predicts a 100-year service life based on assumptions and calculations and does not expressly state that Defendants may be subject to liability beyond the time prescribed by the Statute of Repose.

Plaintiff mentions that this Court had previously ruled that the Statute of Repose does not bar the breach of implied warranty claim. This finding was made upon a motion to dismiss under Rule 4:6-2(e), which is a substantially more lenient standard than that for summary judgment. Specifically, this Court found that under R. 4:6-2(e), Plaintiff's plead sufficient facts to set forth a *prima facie* case that Defendants warranted a 100-year service life for the Walls' design which may cause their claim to fit within exception (b)(1). Here, however, now that the record is developed, this Court finds that the Design Calculations fail to qualify Plaintiff's breach of implied warranty claim under exception (b)(1) of the Statute of Repose. Accordingly, Skanska's Motion for Summary Judgment dismissal of Plaintiff's claim for breach of implied warranty is herein **GRANTED** for the aforesaid reasons.

**Count Three: Gross Negligence.**

"Gross negligence is commonly associated with egregious conduct and is used to describe the upper reaches of negligent conduct." Franco v. Fairleigh Dickinson University, 467 N.J. Super 8, 37 (App. Div. 2021) (quoting Kain v. Gloucester City, 436 N.J. Super. 466, 482 (App. Div. 2014)) (internal quotations omitted). "Gross negligence is an act or omission, which is more than ordinary negligence, but less than willful or intentional misconduct. Gross negligence refers to a person's conduct where an act or failure to act creates an unreasonable risk of harm to another because of the person's failure to exercise slight care or diligence." Introductory Notes, Model Jury Charge (Civil) § 5.12 "Gross Negligence" (2019) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344 (2016)).

It is "an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." Id. at 364-65. It is "more

than inattention or mistaken judgment." <u>Franco</u>, 467 N.J. Super. at 37. When evaluating a claim for gross negligence, the issue is not whether a defendant "failed to exercise reasonable care in any one instance." <u>Steinberg</u>, 226 N.J. at 368 (2016). Rather, the issue is whether a factfinder "viewing the entire tableau" could conclude that the collective instances at issue show a failure to "exercise slight care or diligence" or demonstrate "an extreme departure from the standard of reasonable care." <u>Id.</u>

> Regarding professional negligence:

>> [T]he standard of care **must normally be established by expert testimony.** This is so because a jury should not be allowed to speculate, without expert testimony, in an area where laypersons have insufficient knowledge or experience. Moreover, opinion testimony "must relate to generally accepted . . . standards, not merely to standards personal to the witness." In other words, plaintiff must produce expert testimony upon which the jury could find that the consensus of the particular profession involved recognized the existence of the standard defined by the expert. It is insufficient for plaintiff's expert simply to follow slavishly an "accepted practice" formula; there must be some evidential support offered by the expert establishing the existence of the standard.
>> [<u>Taylor v. DeLosso</u>, 319 N.J. Super. 174, 179-80 (App. Div. 1999) (internal citations omitted) (quoting <u>Fernandez v. Baruch</u>, 52 N.J. 127, 131 (1968)); <u>see also</u> <u>Kaplan v. Skoloff & Wolfe, P.C.</u>, 339 N.J. Super. 97, 102-03 (App. Div. 2001) (relating the same tenet to an attorney malpractice action)] (emphasis added).

Here, Plaintiff urges the Court to allow its gross negligence claim to be submitted to the jury. Plaintiff's gross negligence claim alleges that Skanska owed Plaintiff a duty to perform its work in a manner consistent with the appropriate standards, including the 1989 NJDOT and 1996 AASHTO Standards, and that Skanska failed to do same. While questions of gross negligence are usually left for the jury to decide, a review of the expert reports and depositions relating to Skanska's conduct does not demonstrate that Skanska was grossly negligent or that it deviated from its owed duty of care in procuring the No. 57 Stone. Importantly, neither of the expert reports or depositions of Dr. Fishman and Mr. Suchecki come to a conclusion on whether Skanska violated project specifications, nor could they say that the contaminated fill was due to Skanska's actions.

Specifically, Mr. Suchecki testified that he did not have an opinion within a reasonable degree of engineering probability as to whether the electrochemical properties of the No. 57 stone aggregate caused or contributed to the connectors' premature erosion. <u>See</u> Ex. FF, 75:3-8. Mr.

Suchecki further testified he has not offered any opinions within a reasonable degree of engineering probability that Skanska, as general contractor, acted negligently. Id. at 75:14-18. While Mr. Suchecki's supplemental expert report opined that further testing and analysis *may reveal* that the Number 57 stone aggregate possessed electrochemical properties that did not meet the parameters assumed by RECo and that were established by AASHTO and the NJDOT 1996 standard specifications, no further testing or investigation has been conducted to make such a determination. Id. at 114:10-25 – 115:1-12. Importantly, Plaintiff has not demonstrated the existence of *any evidence* that suggests Skanska was negligent or deviated from the applicable standards of care.

Dr. Fishman similarly testifies that none of his reports prepared in the present matter express an opinion that Skanska was responsible for the failure of either wall. See Pl. Ex. HH, 185:21-25 – 186:1-14. Dr. Fishman further testified that he did not have an opinion within a reasonable degree of engineering probability as to whether the gap-filled material, supplied by Skanska, was adequate. Id. at 189:24-25 – 190:1-5. Dr. Fishman specifically testified, "I've seen results from analysis that shows that the samples that we took didn't meet the criteria for Number 57 stone, but as I've been saying, I don't know how it started. *I'm not sure what the initial condition was*." Id. at 190:6-11 (emphasis added).

"Gross negligence is an act or omission, which is more than ordinary negligence, but less than willful or intentional misconduct. Gross negligence refers to a person's conduct where an act or failure to act creates an unreasonable risk of harm to another because of the person's failure to exercise slight care or diligence." Introductory Notes, Model Jury Charge (Civil) § 5.12 "Gross Negligence" (2019) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344 (2016)).

Here, discovery has concluded without any expert testimony or reports demonstrating that Skanska breached any duty or failed to adhere to any applicable standard of care. Plaintiff has not shown that Skanska has actually failed to exercise slight care or diligence. Accordingly, Skanska's Motion for Summary Judgment dismissal of Plaintiff's gross negligence claim is herein **GRANTED**.


**Count Four: Indemnification.**

Indemnity contracts are interpreted in accordance with the rules governing the construction of contracts generally. Englert v. The Home Depot, 389 N.J. Super. 44, 911 A.2d 72, 77 (App.

Div. 2006); see also Pepe v. Township of Plainsboro, 337 N.J. Super. 209, 215, 766 A.2d 837, 840 (App. Div. 2001) (hence, the judicial task is to determine the intent of the parties from the language used, the surrounding circumstances, and the objectives sought to be achieved thereby). When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee. Mantilla v. NC Mall Assocs., 167 N.J. 262, 272, 770 A.2d 1144 (2001); Englert v. The Home Depot, 389 N.J. Super. 44, 911 A.2d 72, 77 (App. Div. 2006). "The primary aim of third-party insurance is to defend and indemnify insureds against liability for claims made against them as a result of their own conduct." See Kenny & Lattal, New Jersey Insurance Law, § 20-3, at 691 (2022 ed.).

"A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." See Hardy ex. rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009); Petersen v. Twp. Of Raritan, 418 N.J. Super. 125, 133 (App. Div. 2011).

Pursuant to this Court's December 20, 2022 Order, this Court previously found that Plaintiff is not entitled to first-party indemnification and dismissed Count IV against N.J. Urban MetroMall based on a nearly identical indemnity clause to the one presently at issue in the Road Improvement Agreement ("RIA"). Skanska Ex. D; Compare RIA § 10.1 with RIA §10.1. The same analysis applies here. The Court also notes that Plaintiff's brief in opposition **did not** address the Motion for Summary Judgment dismissal of Count Four—indemnity claim. Instead, the indemnification claim against Skanska is only addressed in Plaintiff's response to Skanska's Statement of Uncontroverted Material Facts, ¶¶ 124-127. Plaintiff's RSUMF states that while this Court granted New Jersey MetroMall's Motion for Summary Judgment dismissal of Plaintiff's indemnification claim against NJMM (finding NJMM only agreed to indemnify Plaintiff against third-party claims based on the language of RIA § 10.1), the Court has not ruled on RIA § 10.2. Plaintiff's RSUMF ¶ 126 additionally states that §§ 10.1 and 10.2 of the RIA are not identical.

While RIA §§ 10.1 and 10.2 differ to the extent that § 10.1 states NJMM must indemnify and § 10.2 states Skanska must indemnify, the Court notes that the provisions are substantively identical. As such, given that Plaintiff's brief in opposition to the present motion has not argued to the contrary, this Court relies on the same reasoning it used in holding that the NJMM indemnity clauses only applied to third-party indemnification. This Court's March 3, 2023 Order denying Plaintiff's Motion for Reconsideration on this Court's dismissal of the indemnity claim against NJMM states in pertinent part:

> In evaluating the indemnification provisions…this Court followed the general rules governing the construction of contracts. See Englert v. The Home Depot, 389 N.J. Super. 44, 911 A.2d 72, 77 (App. Div. 2006). Unlike the indemnification provision examined in Boyle, and despite Plaintiff arguing otherwise, this Court has determined that the provision at issue in the present matter is ambiguous. As such, the Court applied the general rule that "when the meaning of the clause is ambiguous . . . the clause should be strictly construed against the indemnitee." Mantilla v. NC Mall Assocs., 167 N.J. 262, 272, 770 A.2d 1144 (2001). This Court in no way made its determination based on a lack of express first-party language when coming to its decision.
>
> [March 3, 2023 Order denying Plaintiff's Motion for Reconsideration, Trans ID: LCV2023778551].

In light of the fact that the provision presently at issue is substantively identical to RIA § 10.1, and given that Plaintiff's brief failed to oppose Skanska's Motion for Summary Judgment dismissal of the indemnification claim, there are no genuine issues of material fact preventing the Court from granting Skanska's present motion. Accordingly, Skanska's Motion for Summary Judgment dismissal of Plaintiff's indemnification claim is herein **GRANTED**.